UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PHONG HOAI LE,

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, *et al.*,

Respondents.

Case No. 1:26-cv-04776 (VC)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 1

This habeas action concerns the detention of Petitioner Phong Hoai Le, a noncitizen who was ordered removed to Vietnam in 1997. Dkt. No. 10-1 at 3 (indicating that Petitioner's appeal of his removal order was dismissed on April 15, 1997); Dkt. No. 1 at 2. Petitioner alleges that he has been detained twice by immigration authorities to effectuate his removal—once in 2016 and another time in 2021—and was released both times on an order of supervision ("OSUP"). Dkt. No. 1 at 1–2. Since his last release on OSUP in 2021, Petitioner has been living at liberty.

On October 31, 2025, Immigration and Customs Enforcement ("ICE") revoked Petitioner's OSUP, placed him under arrest, and transferred him to the California City Detention Facility, where he remains detained. *Id.* at 3; Dkt. No. 10-1 at 3. For the reasons explained below, the Petition is GRANTED.

## I. BACKGROUND

Petitioner is a citizen of Vietnam who entered the United States in 1975 and was granted legal permanent resident status in 1978. *See* Dkt. No. 1 at 2; Dkt. No. 10-1 at 3. This status was revoked, however, following a criminal conviction, and he was ordered removed on September

17, 1996. Dkt. No. 10-1 at 3; *see* Dkt. No. 10-3. The order became administratively final on April 15, 1997. Dkt. No. 10-1 at 3. Petitioner claims that he was detained by ICE in 2016 and 2021 to effectuate his removal, but was released both times on an OSUP. Dkt. No. 1 at 2.

Sometime around February 7, 2025, Petitioner was arrested by the Hillsborough County Sheriff for violating his probation requirements from a prior criminal conviction. *See* Dkt. No. 10-3 at 31–32; Dkt. No. 10-1 at 3. ICE re-detained Petitioner on October 31, 2025, following this arrest. Dkt. No. 10-3 at 3. Based on the records submitted by the Government, ICE did not serve Petitioner with a notice that his OSUP was being revoked or make any finding that his removal to Vietnam was now likely. Rather, records submitted by Respondents indicate that the Government has been unable to obtain travel documents for Petitioner. *Id*. Petitioner has now been detained for over ten months.

## II. DISCUSSION

Although Petitioner asserts four claims for relief, his primary argument can be distilled to one main point: he argues that Respondents failed to follow their own regulations when revoking his OSUP, and doing so constituted a due process violation. Dkt. No. 1 at 17–18. The Court agrees, and finds that Petitioner's revocation of release and subsequent re-detention was unlawful.

Respondents contend that Petitioner cannot meet his burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" under *Zadvydas v. Davis*, 533 U.S. 678 (2001), thus rendering his detention lawful under 8 U.S.C. § 1231(a)(6). Dkt. No. 10 at 2. Under § 1231(a)(6), removable noncitizens "may be detained beyond the [90-day] removal period[.]" U.S.C. § 1231(a)(6). However, the *Zadvydas* burden-shifting framework is not applicable to noncitizens who have been released on OSUP, like Petitioner was here. *See Pham v. Marin*, No. 5:26-CV-00785-MRA-SP, 2026 WL 712946, at *4 (C.D. Cal. Mar. 11, 2026) (noting that district courts have held that "*Zadvydas's* burden-shifting framework does not apply to noncitizens who are *re-detained* pursuant to the revocation of an [Order of Supervision]" and collecting cases). Rather, a set of regulations, 8 C.F.R.

§§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed, but released on OSUP. Under § 241.13(i)(1), a noncitizen who has been released on OSUP, but "who [then] violates any of the conditions of release may be returned to custody … and may be continued in detention for an additional six months in order to affect the alien's removal, if possible[.]" 8 C.F.R. § 241.13(i)(1). A noncitizen's release may also be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The regulations also provide that upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.13(i)(3), 241.4(l)(1).

Respondents have not pointed to any evidence—or even argued—that these regulations were followed in revoking Petitioner's OSUP. Indeed, the record before the Court demonstrates that Petitioner's removal in the reasonably foreseeable future is *not* likely: ICE has already detained Petitioner twice since his order of removal became final and, even though he has now been detained for ten months, ICE still has not acquired travel documents for him. *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025). And though Petitioner's arrest for his probation violation may have constituted a violation of the conditions of his OSUP, Respondents have not argued as such. And in any event, Petitioner contends that he did not receive notice of the reasons for revocation of his OSUP or an informal interview to challenge the revocation, which Respondents have not disputed. Dkt. No. 1 at 17–18.

"ICE, like any agency, 'has the duty to follow its own federal regulations." *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)). As such, courts have found that ICE's failure to follow its own regulations in revoking an individual's OSUP violates due process. *See Diaz v. Wofford*, No. 1:25-CV-01079-

JLT-EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); *M.S.L. v. Bostock*, No. 6:26-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) ("More fundamentally, ICE's failure to provide Petitioner with a timely Notice of Revocation or conduct an informal interview until nearly a month after taking her into custody is a grave violation of Petitioner's due process rights …".); *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *8 (D. Md. Aug. 25, 2025) ("[T]here is absolutely no record of the decision to revoke [the petitioner's] release ... which reveals an even more significant due process problem …".); *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *6 (S.D. Fla. Sept. 9, 2025) ("Although [the petitioner's release] was subject to § 241.4(l) and not § 241.13(i), the Court nevertheless finds that ICE failed to provide [him] with a meaningful opportunity to contest the revocation of his [order of supervision] through an informal interview [in violation of] both ICE's own regulations and the Due Process Clause of the Fifth Amendment."); *Ceesay v. Kurdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y 2025) ("[B]ecause ICE did not follow its own regulations in deciding to re-detain [the petitioner], his due process rights were violated, and he is entitled to release."). As Respondents have not even attempted to show that the revocation of Petitioner's OSUP was appropriate under its own regulations, his now ten-month detention is unlawful.

## III. CONCLUSION AND ORDER

Accordingly, the Petition for Writ of Habeas Corpus is GRANTED as to count four[1]:

1. Respondents SHALL immediately release Petitioner from custody under the same OSUP conditions he was previously released under.

2. Respondents are enjoined and restrained from re-detaining Petitioner absent compliance with statutory and regulatory procedures.

[1] Petitioner has also alleged that his prolonged detention violates due process (count one) and that any removal to a third country would be unlawful (counts two and three). As count four affords Petitioner the relief to which he is entitled—release on the same conditions of his previous OSUP—the Court need not consider his other claims for relief.

3. The Clerk of the Court is directed to close this case and enter judgment in favor of Petitioner.

**IT IS SO ORDERED.**

Dated: September 10, 2026

VINCE CHHABRIA
United States District Judge